United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICK NOEL,

             Petitioner,

    v.

SUSAN PEERY,

             Respondent.

Case No. 21-cv-08801-EMC

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS**

Docket No. 25

    Petitioner Patrick Noel has filed a habeas petition challenging his state court conviction. Mr. Noel is proceeding with a subset of the claims he initially asserted in his habeas petition. Now pending before the Court is the state's motion to dismiss three out of the four claims. Having considered the parties' briefs, the Court hereby finds the matter suitable for disposition without oral argument. The state's motion to dismiss is **GRANTED**.

I.      <u>FACTUAL & PROCEDURAL BACKGROUND</u>

A.    <u>2005 Conviction</u>

    In 2005, Mr. Noel was convicted by a jury in state court. He was found guilty of several crimes, including attempted murder and assault of Richard N., his cousin. The evidence that was presented to the jury is summarized in a state court appellate decision. *See People v. Noel*, No. A110859, 2007 Cal. App. Unpub. LEXIS 1511, at *1-2 (Cal. Ct. App. Feb. 26, 2007). To wit:

    On November 26, 2003, at around 9:30 p.m., Richard – Mr. Noel's cousin – was walking on a street when a black Mitsubishi Montero drove past him. Richard recognized the car as belonging to his friend Raelene D., and he further saw Mr. Noel driving the car. *See id.* at *3. Mr. Noel turned the car around and pulled to a stop in the middle of the street next to Richard. *See id.*

"Richard saw a flash through the rear passenger side window, heard a gunshot, and felt a gust of wind on his neck." *Id.* He ran to a friend's house which was close by and said, "'Oh, my god, Patrick shot me.'" *Id.*

The following morning, at around 2:00 a.m., Mr. Noel went to Raelene's house. Raelene was Mr. Noel's girlfriend. Mr. Noel went to Raelene's bedroom window and told her that "he had tried to kill his cousin because Richard had snitched on him in the past." *Id.*

The police were later dispatched to Raelene's house at around 4:00 a.m. because "it was reported that defendant was trying to break in through a window." *Id.* at *3-4. When the police arrived, Mr. Noel was no longer there, but the police found the black Montero in the street. The police also found a pistol in the front seat, "partially covered by a red bandana." *Id.* at *4. The following day, the police conducted a second search of the car and "found a shell casing in the rear, where it would have been ejected if defendant had been shooting out the rear passenger-side window from the driver's seat." *Id.*

Based on, *inter alia*, the above, the jury convicted Mr. Noel of attempted murder of Richard and assault on Richard with a firearm. The jury further found Mr. Noel guilty of the crime of unlawful participation in a criminal street gang **and** further found certain allegations related to gang enhancements to be true.[1] Specifically, the jury found that the crimes against Richard "were committed for the benefit of a criminal street gang." *Id.* at *2.

A police officer by the name of Michael Globe testified as a gang expert in support of the prosecution. *See id.* at *7.

> He gave background information about the Norteno street gang. [He] testified that members of the Norteno gang typically wear red clothing, carry red bandanas, and have tattoos, including representations of the number 14, because "N" is the 14th letter of the alphabet. Globe testified that in his opinion defendant was a member of the Nortenos. He based his opinion on the fact that in November 2002 defendant admitted to Officer Globe that he was a Norteno; that during this 2002 encounter defendant wore a red

---

[1] "[A] gang enhancement . . . is not a substantive offense," but rather "provides for greater punishment where a defendant is convicted of a gang-related felony; that is, a felony 'committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.'" *Noel*, 2007 Cal. App. Unpub. 1511, at *16.

2

sweatshirt, red belt, and red bandana, and that the defendant had various tattoos that identified him as a Norteno.  In particular, defendant had a tattoo of the number 14; a one-dot and a four-dot tattoo that together represent the number 14; and a tattoo of the letters "WSK," short for "Willits Scrap Killers."  Globe testified that "Willits" signifies the city of Willits and "scrap" is a derogatory term for a member of the rival Sureno gang.  The expression "WSK" thus refers to killing Surenos.

Globe further testified that a gang member can earn ""respect" from his gang in many ways, including committing crimes for the promotion of the gang, or "creating a fear in society and the fear against Sureno gang members."  Even if a defendant committed a violent crime by himself, the gang would benefit because "when people find out what you did, the gang finds out what you did, the rival gang members find out what you did, it creates the fear to others and it gives you respect from within the gang that this person is willing to do anything and die for whatever cause they believe in dying for."  Officer Globe explained that in the gang world, if "you attempt to kill or shoot at a snitch because he's a snitch – which in the gang culture and in the criminal culture is less than a person, because they're not a stand-up person, because in a sense they're ratting out the other guys – killing that person or attempting to kill that person would gain respect within the gang" and give the perpetrator "almost [] a higher status" within the gang for his efforts.  Globe was of the opinion that when defendant shot at Richard he was benefiting the Norteno gang because defendant believed Richard was a snitch and snitches are disdained in gang culture.  Even if Richard were not a member of a gang (and there was no evidence that he was), a crime committed by a Norteno against an ordinary citizen could benefit the Norteno gang.

*Id.* at *7-8.

In addition to the gang expert, Richard provided testimony about Mr. Noel and his gang affiliation.  Richard testified that Mr. Noel said he was a gang member, that Mr. Noel preferred to wear red, that Mr. Noel's "WSK" tattoo conveyed a dislike of the Surenos, and that the "14" tattoo relates to Nortenos.  *See id.* at *9.  Raelene (Mr. Noel's girlfriend at the time of the attempted murder and assault) also testified that "defendant made it known to everyone that he was affiliated with the Nortenos."  *Id.*

In addition to the crimes of attempted murder of and assault on Richard, the jury found Mr. Noel guilty of other felonies based on his conduct with respect to Raelene.  The jury was presented with evidence that, at around 3:00 p.m. on November 26, 2003 (*i.e.*, earlier in the day before Mr. Noel shot at Richard), Mr. Noel went to Raelene's house with the black Montero and wanted her to drive him from Willits to Oroville.  Raelene agreed because she wanted to get her car back and

3

to end her relationship with Mr. Noel.

Raelene drove Mr. Noel with her 4-year-old daughter, J.D., in the back seat of the Montero. *See id.* at *4. At some point, Mr. Noel no longer wanted to go to Oroville and so they turned around to return to Willits. During the drive back, Mr. Noel and Raelene got into an argument, Mr. Noel pulled out a pistol and fired it into the floor of the car, and Mr. Noel later put the pistol up against Raelene's leg. *See id.* at *4-5. Raelene eventually got out of the car with J.D., and Mr. Noel drove off in the Montero. *See id.* at *5.

After the jury convicted Mr. Noel, he moved for a new trial. The state trial court granted in part the motion for a new trial. Specifically, it vacated the enhancements based on allegations that Mr. Noel committed the crimes against Richard for the benefit of a street gang. *See id.* at *2. After the prosecuted decided not to retry the enhancements or appeal the court's decision, the trial court sentenced Mr. Noel to 41 years. *See id.* at *2-3.

B.    2007 Direct Appeal in State Court

Mr. Noel pursued a direct appeal in state court. In 2007, the state appellate court affirmed his conviction but modified his sentence (because of an issue related to a firearm enhancement). Of note, the appellate court upheld the conviction on the crime of gang participation, even though the trial court had vacated the gang enhancements. The appellate court explained:

> Defendant misconstrues the nature of the trial court's finding. "In considering a motion for a new trial made on the ground of insufficiency of the evidence to support the verdict, the trial court independently weighs the evidence" and should grant the motion if it would have decided the case differently from the jury. But a trial court's decision to grant a motion for a new trial is not a determination that the evidence is insufficient as a matter of law. That is the issue before us now under the substantial evidence test. Unlike a trial court considering a motion for a new trial, in deciding whether substantial evidence supports a verdict this court does not independently reweigh the evidence. Instead, we consider whether any rational trier of fact could have found proof beyond a reasonable doubt. The trial court's decision to grant the motion for a new trial with respect to the enhancement indicates that a rational trier of fact could conclude that the prosecution failed to prove beyond a reasonable doubt that the shooting was gang-related, but it does not show that no rational trier of fact could conclude to the contrary. Although the trial court concluded there was insufficient evidence of gang-relatedness under his independent review of the evidence, our review is more deferential to the jury's verdicts.

United States District Court
Northern District of California

4

1    *Id.* at \*28-29.

2    C.    <u>2008 First Federal Habeas Petition</u>

3        In 2008, Mr. Noel filed his first federal habeas petition.  *See Noel v. Walker*, No. C-08-

4    3777 EMC (N.D. Cal.).  This Court denied him relief, and Mr. Noel took an appeal to the Ninth

5    Circuit.  On appeal, he made two arguments: (1) the evidence at trial was constitutionally

6    insufficient to support a conviction for gang participation; and (2) his right to a fair trial was

7    violated because the state trial court admitted irrelevant, unfairly prejudicial gang evidence.  *See*

8    *Noel v. Lewis*, 605 Fed. Appx. 606, 607 (9th Cir. 2015).

9        In a decision issued in 2015, the Ninth Circuit agreed with Mr. Noel on the first argument.

10    The Ninth Circuit noted that, after the state appellate court's decision in Mr. Noel's case was

11    issued, the California Supreme Court held that the crime of gang participation must be based on a

12    felony committed by at least two members of the same gang.  Here, "[p]rosecutors had not

13    presented evidence that any other member of Noel's gang participated in the drive-by shooting

14    with Noel."  *Id.* at 608.

15        However, the court rejected Mr. Noel's second argument, explaining that, "[e]ven though

16    Noel could not have been convicted of the gang participation offense . . . because he committed

17    his crimes alone, he could have been subject to the [gang] enhancement."  *Id.* at 609.  The Ninth

18    Circuit added that, even though the state trial court had set aside the gang enhancement, "that

19    ruling, in and of itself, does not establish that there were no permissible inferences to be drawn

20    from the gang evidence.  Noel's due process rights to a fair trial were not violated by admission of

21    the gang evidence, from which permissible inferences about Noel's motive could have been

22    drawn."  *Id.*

23        Following the Ninth Circuit's ruling, Mr. Noel was resentenced in 2016 to 39 years.  He

24    was later resentenced again in 2019 because he had been denied the right to be present at the 2016

25    resentencing.  At the 2019 resentencing, he was resentenced to 37 years.  *See* Docket No. 6 (Order

26    at 2); *see also People v. Noel*, No. A159257, 2020 Cal. App. Unpub. LEXIS 8223, at \*5-6 (Cal.

27    Ct. App. Dec. 14, 2020).

28

United States District Court
Northern District of California

5

D.     <u>2019 Second Federal Habeas Petition</u>

In 2019, Mr. Noel filed a second federal habeas petition. *See Noel v. Warden*, No. C-19-3118 EMC (N.D. Cal.). The Court dismissed that petition on the basis of *Younger* abstention – *i.e.*, because, at the time of the Court's ruling, the 2019 resentencing was still pending in state court. *See* Docket No. 6 (Order at 2).

E.     <u>2021 Third Federal Habeas Petition</u>

In 2021, Mr. Noel filed a third federal habeas petition. This is the petition in the case at bar. In two prior orders, this Court narrowed Mr. Noel's claims down to four:

- **Count 3:** ineffective assistance of counsel during the trial court proceedings;

- **Count 6:** violation of the Confrontation Clause related to gang expert testimony during the trial court proceedings;

- **Count 8:** improper denial of a motion for a new trial excluding any gang evidence; and

- **Count 9:** violation of *Brady* based on failure to turn over exculpatory evidence during the 2019 motion for a new trial.

*See generally* Docket Nos. 6, 15 (orders).

As to Counts 3 and 6, the Court held that they were not barred by the rule prohibiting second or successive petitions. Relying on Ninth Circuit precedent, *see Creech v. Richardson*, 59 F.4th 372 (9th Cir. 2023), the Court acknowledged that Mr. Noel was "rais[ing] claims which were presented in his first habeas petition and which attack his original conviction," *but* "Mr. Noel was re-sentenced between the adjudication of his first federal habeas petition and the filing of the instant [third] petition. Thus, like the petitioner in *Creech*, . . . Mr. Noel may resurrect claims from the previous petition." Docket No. 15 (Order at 6).

F.     <u>Pending Motion to Dismiss</u>

After the Court issued a briefing schedule for the third habeas petition, the state filed the currently pending motion to dismiss. In the motion, the state challenges three of the four claims – *i.e.*, Counts 3, 8, and 9.

1

## II.    DISCUSSION

2    A.    Legal Standard

3    "A motion to dismiss a habeas petition, like any other motion to dismiss a civil complaint,

4    is governed by Federal Rule of Civil Procedure 12(b)(6)."  *Dull v. Comm'r of Corr.*, No. 3:23-cv-

5    1220 (SVN), 2024 U.S. Dist. LEXIS 66329, at *5 (D. Conn. Apr. 11, 2024); *see also Wilson v.*

6    *Doe*, No. 21-CV-9619 (KPF) (JW), 2023 U.S. Dist. LEXIS 2840, at *5 (S.D.N.Y. Jan. 6, 2023)

7    (stating that "[m]options to dismiss a habeas petition are subject to the same standards as any civil

8    matter faced with a Rule 12(b)(6) motion to dismiss"); *accord* Rule 12 Governing § 2254 Cases

9    (providing that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent

10    with any statutory provisions or these rules, may be applied to a proceeding under these rules").

11    B.    Count 3

12    In Count 3, Mr. Noel asserts ineffective assistance of counsel during the trial court

13    proceedings.  Mr. Noel's habeas petition has a fairly long list of how trial counsel failed to provide

14    ineffective assistance.  *See* Pet. at 19-21 (identifying seven alleged failures, some with

15    subcategories).  In prior orders, the Court put the alleged failures into three categories: (a) failure

16    to suppress inflammatory gang evidence; (b) failure to properly investigate; and (c) failure to file

17    discovery motions to obtain exculpatory evidence.  *See generally* Docket Nos. 6, 15 (orders).  The

18    government now moves for dismissal of Count 3.  However, it has recategorized the alleged

19    failures of counsel – enumerating them as Counts 3(i)-(x) – so that they more closely align with

20    the alleged failures as described in the habeas petition.  *See* Mot. at 3.  Below is the government's

21    categorization:

22          (i)    Failing to file a discovery motion and to locate exculpatory evidence (including

23                  evidence related to the prosecution's dismissal of one of the charges against Mr.

24                  Noel, specifically, the charge of assault on Nathaniel Simmerson[2]).

25    ──────────────

26    [2] Mr. Simmerson was discussed in the Court's order on the first federal habeas petition.  *See Noel*
*v. Lewis*, No. C-08-3777 EMC (PR), 2012 U.S. Dist. LEXIS 65820, at *21-22 (N.D. Cal. May 10,

27    2012) ("Petitioner makes a rather incoherent claim that Raelene, Richard, and Nathaniel
Simmerson, a person uncovered during the police investigation, conspired to frame Petitioner.

28    Simmerson apparently alleged to police that Petitioner, while wearing a red bandana, once pointed
a gun at him.  A gun and a red bandana were later found in the Montero a few hours later.

United States District Court
Northern District of California

United States District Court
Northern District of California

| | (ii) | Failing to call a gang expert. |

(iii)  Failing to call a ballistics expert to respond to the prosecution's expert who provided testimony about the shell casing found in Raelene's car (the black Montero) and the hole in the floorboard of the car.

(iv)  Failing to call an expert to testify that Richard and Raelene were in a state of drug-induced psychosis.

(v)  Failing to call an expert to testify about shear marks found on the shell casing in Raelene's car (the black Montero).

(vi)  Failing to investigate Arnold Partridge, Jr., who would have testified that Mr. Simmerson made up false statements about Mr. Noel.

(vii)  Failing to call a rebuttal gang expert.[3]

(viii)  Failing to investigate Margaret O'Neill (Mr. Noel's mother) who would have testified that Mr. Noel is Native American, is not a gang member, and was at her house on the dates of the alleged crimes.[4]

(ix)  Failing to investigate Ms. O'Neill who would have refuted testimony by Raelene.[5]

(x)  Failing to file a motion to suppress gang evidence.[6]

The state tenders several arguments as to why Count 3 should be dismissed, either in part or in whole. The Court agrees with the state that the entirety of Count 3 is barred by a procedural default.

Procedural default is an affirmative defense. *See Morrison v. Mahoney*, 399 F.3d 1042,

---

Petitioner construes these facts as evidence that Raelene, Richard, and Nathanial conspired to frame him with the charges at issue in this petition. He further contends that the government failed to disclose a deal it made with Nathanial to dismiss criminal charges. Simmerson was mentioned during the preliminary hearing, but no evidence regarding him was presented at trial.").

[3] Mr. Noel identifies this alleged failure as No. 6(2) in his habeas petition.

[4] Mr. Noel identifies this alleged failure as No. 6(3) in his habeas petition.

[5] Mr. Noel identifies this alleged failure as No. 6(4) in his habeas petition.

[6] Mr. Noel identifies this alleged failure as No. 7 in his habeas petition.

1046 (9th Cir. 2005); *see also Bryant v. Stirling*, 126 F.4th 991, 996 (4th Cir. 2025) (adding that "'the burden rests with a state to prove the adequacy of the relied-on procedural bar'").  Normally, a plaintiff/petitioner does not need to plead around an affirmative defense.  However, if an affirmative defense is ascertainable on the face of the complaint or from judicially noticeable documents, then there should be no impediment to it being raised in a 12(b)(6) motion to dismiss. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (stating that "plaintiffs ordinarily need not 'plead on the subject of an anticipated affirmative defense'[;] [w]hen an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss").

The doctrine of procedural default is a specific application of the general doctrine that

> federal courts will not review "a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." . . . [The doctrine] bars a federal court from granting relief on a claim when a state court declined to address the claim because the petitioner failed to meet a state procedural requirement.

*Taylor v. Chappell*, No. C-92-1627 EMC, 2014 U.S. Dist. LEXIS 41699, at *3 (N.D. Cal. Mar. 26, 2014); *see also Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Tong Xiong v. Felker*, 681 F.3d 1067, 1075 (9th Cir. 2012); *Fields v. Calderon*, 125 F. 3d 757, 762 (9th Cir. 1997).

In the case at bar, the state argues that there is a procedural default because, in December 2017, a state appellate court denied a habeas petition that Mr. Noel had filed on the basis that it was procedurally barred on state law grounds – including on the basis that the petition was not timely and that it constituted a successive petition, both under California law.  *See* Docket No. 25 (ECF Page 183) (order) (citing state court decisions on timeliness and successive petitions).  In response, Mr. Noel does not dispute that a denial based on lack of timeliness or an improper successive petition is a valid procedural bar to support a procedural default.  Nor does he argue cause and prejudice to overcome the asserted procedural bar.  Instead, he makes two different contentions:

> (1) The state's argument "is dependent on reading out of the analysis the intervening state court judgment that *followed*" the 2017 state appellate court decision – *i.e.*, the

9

1    intervening state court judgment that made his current habeas petition a "first"

2    petition rather than a successive one.  Opp'n at 9 (emphasis in original).

3    (2) The state's argument is based on a state appellate court decision, but the

4    appropriate decision to consider is the California Supreme Court decision – even if

5    it was just a summary denial – and that summary denial should be construed as an

6    adjudication on the merits, *i.e.*, not a procedural bar.

7    Both of Mr. Noel's arguments are problematic.

8    1.    *Magwood*

9    Mr. Noel's first argument is tied to *Magwood v. Patterson*, 561 U.S. 320 (2010).

> In *Magwood*, the Supreme Court held that a second federal habeas
> petition challenging a sentence imposed in an *intervening* state court
> judgment was not a second or successive petition.  *Magwood* left
> open the question whether § 2244(b) would allow a petitioner who
> obtains a new sentence to challenge "not only his resulting, new
> sentence, but also his original, undisturbed conviction."  [The Ninth
> Circuit] answered that question in *Wentzell v. Neven*, 674 F.3d 1124
> (9th Cir. 2012).  [It] held that "the basic holding of *Magwood*" must
> extend to cases where a new petition challenges undisturbed parts of
> the judgment, including a petitioner's original conviction, because
> *Magwood* requires [a court] to "interpret successive applications
> *with respect to the judgment challenged* and not with respect to the
> particular components of that judgment."  "'[W]here a first habeas
> petition results in an *amended* judgment, a subsequent petition is not
> successive,' even if its claims could have been raised in a prior
> petition or the petitioner 'effectively challenges an unamended
> component of the judgment.'"

19    *Creech v. Richardson*, 59 F.4th 372, 390 (9th Cir. 2023) (emphasis added).

20    The problem with Mr. Noel's position is that *Magwood* and its progeny are "limited to an

21    interpretation of [28 U.S.C] § 2244(b) [which addresses second or successive petitions under

22    *federal* law], and have no bearing on the proper application of *California's* second or

23    successiveness bar."  Reply at 2 (emphasis added).

24    Furthermore, Mr. Noel does not cite to any authority supporting his position that an

25    intervening judgment automatically defeats an assertion of procedural default under California

26    law.  In fact, the Supreme Court has indicated otherwise.  In *Magwood*, the U.S. Supreme Court

27    noted:

28    The dissent's concern that our rule will allow "petitioners to bring

United States District Court
Northern District of California

abusive claims so long as they have won any victory pursuant to a prior federal habeas petition," is greatly exaggerated. A petitioner may not raise in federal court an error that he failed to raise properly in state court in a challenge to the judgment reflecting the error. If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review. In this case, the State argued that Magwood procedurally defaulted his fair-warning claim by failing to raise it properly in his collateral challenge to the 1986 judgment, and sought dismissal on that ground. Only after ruling that Magwood did not procedurally default the claim did the District Court sua sponte consider whether § 2244(b) barred review. We leave that procedural-default ruling to the Court of Appeals to review in the first instance. *Here, we underscore only that procedural-default rules continue to constrain review of claims in all applications, whether the applications are "second or successive" or not.*

*Magwood*, 561 U.S. at 340 (emphasis added).

Notably, the Ninth Circuit has referenced this language in *Magwood*, acknowledging that its "holding will likely have the effect of allowing more prisoners to file timely federal habeas petitions," but (as noted in *Magwood*) there was a "limited effect [to] broadening the rule that a petition is not second or successive" – including the fact that "the procedural default rule will continue to limit what claims may be brought in a federal petition" (*i.e.*, "the petitioner will be limited to claims he has already made before the state court"). *Gonzalez v. Sherman*, 873 F.3d 763, 773-74 (9th Cir. 2017). In short, the state court's application of state procedural default rules remains viable.

### 2.    "Look Through" to California Court of Appeal Decision

Mr. Noel's second assertion is that no procedural bar should apply because, even though the California Court of Appeals held that there was a procedural bar under state law (based on, *e.g.*, timeliness and the successive nature of the petition), that is the wrong decision to consider. *See* Mot., Ex. 5 (ECF Page 182) (December 2017 decision of California appellate court). According to Mr. Noel, it is the California Supreme Court's decision that counts, even if it was just a summary denial, *see* Mot., Ex. 7 (ECF Page 295) (November 2018 decision of California Supreme Court), and the California Supreme Court did not (explicitly) deny his habeas petition based on any procedural bar but rather (implicitly) on the merits.

As a backdrop for Mr. Noel's argument, the Court considers two opinions.

11

- First, there is the Supreme Court decision *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). The Supreme Court was asked to "decide whether the unexplained denial of a petition for habeas corpus by a state court lifts a state procedural bar imposed on direct appeal, so that a state prisoner may then have his claim heard on the merits in a federal habeas proceeding." *Id.* at 799. The Court held: "[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did *not* silently disregard that bar and consider the merits." *Id.* at 803 (emphasis added). "The maxim is that silence implies consent, not the opposite – and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below. The essence of unexplained orders is that they say nothing. We think that a presumption which gives them *no* effect – which simply 'looks through' them to the last reasoned decision – most nearly reflects the role they are ordinarily intended to play." *Id.* at 804. The presumption, however, is rebuttable; "strong evidence can refute it. It might be shown, for example, that even though the last reasoned state-court opinion had relied upon a procedural default, a retroactive change in law had eliminated that ground as a basis of decision, and the court which issued the later unexplained order had directed extensive briefing limited to the merits of the federal claim." *Id.*

- Second, there is a 2020 decision from the California Supreme Court, *Robinson v. Lewis*, 9 Cal. 5th 883 (2020). In *Robinson*, the Cal. Supreme Court explained that the habeas system in state court does not involve appeals; rather, each court (regardless of level) has a new habeas petition presented to it; each court (regardless of level) has original jurisdiction.

Mr. Noel essentially contends that, because of *Robinson* and its clarification about the state habeas process, it is improper to "look through" the California Supreme Court's summary denial to the decision of the lower appellate court – *i.e.*, because the California Supreme Court's decision is an "*independent* determination." Opp'n at 10 (emphasis in original).

1    While Mr. Noel's position is not without any merit, the Court rejects it because of the

2    Ninth Circuit decision *Flemming v. Matteson*, 26 F.4th 1136 (9th Cir. 2022). *Flemming* post-dates

3    *Robinson*. In *Flemming*, the Ninth Circuit still applied the presumption that a reviewing federal

4    court should "look through" a summary disposition of a state court and consider the last most

5    reasoned opinion of a lower state court (unless that presumption can be rebutted). In support, the

6    Ninth Circuit cited *Wilson v. Sellers*, 138 S. Ct. at 1192 (2018). There, the Supreme Court applied

7    the look-through presumption even though the Georgia Supreme Court had stated that summary

8    denials should *not* be interpreted to adopt the lower court's rationale. *See Flemming*, 26 F.4th at

9    1143. The state supreme court's statement was not enough to rebut the presumption. The Ninth

10    Circuit then addressed the California Supreme Court's decision in *Robinson* and concluded that it

11    *supported* the Ninth Circuit's holding that the look-through presumption should apply. The Ninth

12    Circuit acknowledged that, in *Robinson*, the California Supreme Court explained that each habeas

13    petition is a new petition invoking that court's original jurisdiction. But, the Ninth Circuit

14    indicated, given that each one is a new petition, it is unreasonable to think that a summary denial

15    is anything *but* an endorsement of the lower court opinion. *See id.* at 1144 ("[I]t is unreasonable

16    to interpret the California Court of Appeal's summary denial of a new habeas petition after

17    requesting an opposition brief as *implicitly* rejecting – much less overruling – a trial court's prior

18    ruling on the timeliness of an entirely separate habeas petition.") (emphasis in original).

19    The Ninth Circuit has since followed the approach set out in *Flemming*, albeit in an

20    unpublished case. *See Woods v. Montgomery*, No. 14-56195, 2023 U.S. App. LEXIS 15142, at *4

21    & n.2 (9th Cir. June 16, 2023) (stating that, because petitioner raised his ineffective assistance

22    claim "before the state courts, we 'look through' to the last reasoned state court decision

23    addressing its merits – here, the California Court of Appeal's opinion on direct review – and read

24    the California Supreme Court's unexplained order rejecting the claim to rest upon the same

25    ground"; citing *Wilson* and *Flemming* in support). And post-*Flemming*, a number of district courts

26    have cited the case in holding that *Robinson* does not affect the look-through presumption set out

27    in *Ylst*. *See, e.g.*, *Stevens v. Madden*, 2025 U.S. Dist. LEXIS 108241, at *9 n.6 (C.D. Cal. Apr. 21,

28    2025) (taking note of *Robinson* but stating that, "since 2022, courts in this district have routinely

13

relied on *Wilson v. Sellers*, 584 U.S. 122 (2018) and *Flemming v. Matteson*, 26 F.4th 1136 (9th

Cir. 2022), for the proposition that the 'look through' presumption is not rebutted merely because

a petitioner filed a habeas petition in a higher court and the court summarily denied relief");

*Phillips v. Fisher*, No. 1:19-cv-01589-ADA-SAB-HC, 2023 U.S. Dist. LEXIS 18024, *37-38

(E.D. Cal. Feb. 2, 2023) ("find[ing] that *Robinson* does not eliminate the 'look through'

presumption employed in federal habeas cases [based on *Flemming* and *Wilson*]").

To be sure, there are some district courts that do not agree, and Mr. Noel has cited some

decisions in his brief.  But those decisions are problematic for various reasons.

For example, in *Banks v. Holbrook*, No. 2:24-cv-05121-PA (GJS), 2025 U.S. Dist. LEXIS

130607 (C.D. Cal. May 27, 2025), the district court noted that the claims asserted by the petitioner

were denied summarily by the California Supreme Court.  It held that "[t]he state high court's

denial of relief is deemed to be a merits decision, as there is nothing in the record to indicate that it

was not." *Id.* at *12.  According to the court:

> Applying the look through presumption in this case is not warranted
> in light of *Robinson v. Lewis*, 9 Cal. 5th 883, 895-96 (2020)
> (explaining that in California habeas review, a habeas petition filed
> at each level of the state court system constitutes an original petition
> rather than an appeal, and that when the California Supreme Court
> considers such an original petition before it, the state high court does
> not directly review the prior ruling made on an original petition filed
> at a lower state court level and "makes its own ruling").

*Id.* at *12 n.3.  *Banks*, however, did not address *Flemming* (or *Wilson*).

Another case cited by Mr. Noel, *Williams v. California*, No. 2:17-cv-2627 TLN AC P,

2024 U.S. Dist. LEXIS 75832 (E.D. Cal. Apr. 25, 2024), did discuss *Flemming*, *see id.* at *19 n.8,

but the reasoning in the case is not persuasive.  The court distinguished *Flemming* from the case

before it because *Flemming* dealt with the issue of timeliness, but the court did not explain how

that was a material distinction in terms of why or why not the *Ylst* look-through presumption

should apply.  In any event, in the instant case before the Court, the issue *is* timeliness

(specifically, a procedural default based on lack of timeliness); thus, *Flemming* is on point.

The Court, therefore, rejects Mr. Noel's contention that the *Ylst* look-through presumption

does not apply.  Given that presumption, it is essentially Mr. Noel's burden to show why that

1   presumption should not apply.  He has not offered any reason.  The Court, therefore, looks to the

2   analysis of the California Court of Appeal (the last reasoned decision) which held that there was a

3   procedural bar to Mr. Noel's petition for relief (based on timeliness and the successive nature of

4   his petition under state law).  Mr. Noel has not offered any argument on cause and prejudice to

5   overcome the procedural default.  Accordingly, the Court grants the state's motion to dismiss all

6   of Count 3 on the basis of a procedural default.

7   C.     Count 8

8          In Count 8, Mr. Noel challenges the denial of his motion for a new trial: he had sought a

9   new trial wherein any gang evidence would be excluded.  *See* Docket No. 1 (Pet.) (ECF Page 44).

10  The state argues that Count 8 should be dismissed because: (1) it is predicated on state law, and

11  thus not cognizable for federal habeas; (2) to the extent Mr. Noel is now claiming a violation of

12  federal due process (which is cognizable on federal habeas), that claim is not exhausted since he

13  presented to the California Supreme Court a claim based on state law only; (3) the Ninth Circuit

14  previously rejected Mr. Noel's argument that there was a violation of due process based on the

15  admission of gang evidence[7]; and (4) the claim is procedurally defaulted (in particular, on the

16  basis that Mr. Noel had asserted his claim "in his direct review proceedings challenging his 2019

17  resentencing . . . but the trial court had no jurisdiction to consider a new trial motion on

18  *resentencing*").  Mot. at 11 (emphasis added).

19         For purposes of this decision, the Court assumes that Count 8 is predicated on federal law

20  (*i.e.*, Mr. Noel did not simply raise a state law claim in his habeas petition).  But even assuming

21  such in Mr. Noel's favor, dismissal of Count 8 is proper because, as the state contends, he did not

22  exhaust the federal due process claim in the state court system.  That is, Mr. Noel presented to the

23  California Supreme Court a claim based on state law only.  In his brief filed with the California

---

[7] As noted above, the Ninth Circuit held that, "[e]ven though Noel could not have been convicted of the gang participation offense . . . because he committed his crimes alone, he could have been subject to the [gang] enhancement."  *Noel v. Lewis*, 605 Fed. Appx. at 609.  Also, even though the state trial court had set aside the gang enhancement, "that ruling, in and of itself, does not establish that there were no permissible inferences to be drawn from the gang evidence.  Noel's due process rights to a fair trial were not violated by admission of the gang evidence, from which permissible inferences about Noel's motive could have been drawn."  *Id.*

United States District Court
Northern District of California

1    Supreme Court, Mr. Noel repeatedly asserted that he was bringing a claim predicated on state law,

2    not federal.  For example, he argued as follows:

3          In denying appellant's latest motion for new trial, in conjunction
           with his 2019 resentencing, the superior court agreed with the
4          prosecution's argument that the Ninth Circuit ruling constituted law
           of the case as to this claim.  Appellant disagrees; the Ninth Circuit
5          ruling does not constitute a "law of the case" bar to the claim
           appellant makes here, **because it is based on different law**.  The
6          Ninth Circuit held that the **federal due process clause** would not be
           violated by admission of the gang evidence because there were
7          inferences about motive that could permissibly be drawn from it:
           "Noel's due process rights to a fair trial were not violated by
8          admission of the gang evidence, from which permissible inferences
           about Noel's motive could have been drawn, . . . ."  (*Noel v. Lewis*,
9          *supra*, 605 Fed. Appx. 606, 609.)

10         **Under state law**, however, at a new trial without any gang charges
           or enhancement allegations, there would be a strong argument that
11         the prosecution's gang evidence should be excluded under the rule of
           *People v. Albarran* (2007) 149 Cal. App. 4th 214.
12

13   Mot., Ex. 8 (ECF Page 314) (Mr. Noel's brief filed with the California Supreme Court) (emphasis

14   added); *see also* Mot., Ex. 8 (ECF Page 316) ("Moreover, **under California law**, there is a

15   substantial difference between the rules governing the admission of street gang evidence in a case

16   where street gang evidence is legally required to prove street gang charges under section 186.22,

17   subdivisions (a) and (b), on the one hand, and the rules governing the admission of such evidence

18   to prove motive, where no street gang crime or enhancement is charged.") (emphasis added); Mot.,

19   Ex. 8 (ECF Page 317) ("Since these are **matters of state law**, they were not – and indeed could

20   not have been – part of the Ninth Circuit ruling . . . .") (emphasis added); Mot., Ex. 8 (ECF Page

21   318) ("[T]he Ninth Circuit decision cannot constitute law of the case as to the claim appellant

22   raises, **because it is based on different law**.") (emphasis added).

23         Mr. Noel tries to avoid his reliance on state law by suggesting that the state has

24   mischaracterized his brief filed with the California Supreme Court:

25         Obviously trying to plead around the problem of the Ninth Circuit's
           rejection of that claim, Noel's lawyer emphasized its state-law
26         aspects.  That,  however, does not establish a failure to exhaust. The
           petition for review [filed with the California Supreme Court] relied
27         heavily on *People v. Albarran*, 149 Cal. App. 4th 214 (2007), which
           held that the erroneous admission of gang evidence "violated the
28         defendant's federal due-process rights."

Opp'n at 15.  Mr. Noel is correct that *Albarran*'s holding was about a federal due process violation.  However, he ignores the fact that he cited *Albarran* to support the contention that he had a claim under state law: "Under state law, however, at a new trial without any gang charges or enhancement allegations, there would be a strong argument that the prosecution's gang evidence should be excluded under the rule of *People v. Albarran* (2007) 149 Cal. App. 4th 214."  Mot., Ex. 8 (ECF Page 316).  Accordingly, the Court holds that Mr. Noel has failed to exhaust his claim for violation of federal due process.  *Cf. Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").

D.    <u>Count 9</u>

        In Count 9, Mr. Noel asserts that there was a *Brady* violation because the prosecution failed to turn over exculpatory evidence during the 2019 motion for a new trial.  *See Banks v. Dretke*, 540 U.S. 668, 691 (2004) (stating that the elements of a *Brady* violation are as follows: "'[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued'").  This claim relates to the witness Mr. Simmerson.  As alleged in the habeas petition, Mr. Noel was initially charged with not only crimes against his cousin Richard and his then-girlfriend Raelene but also a crime against Mr. Simmerson.  Allegedly, Mr. Noel had threatened Mr. Simmerson with a firearm about three hours after he shot at his cousin Richard.  On the first day of trial, the prosecution moved to dismiss the charge of assaulting Mr. Simmerson with a firearm, claiming that, after significant investigation, the prosecution no longer believed Mr. Noel to be guilty of that charge.  *See* Pet. at 6.

        During state court collateral review proceedings, Mr. Noel asked the prosecution about what significant information had been learned such that it dropped the charge related to the alleged assault of Mr. Simmerson.  In his pending habeas petition, Mr. Noel contends that the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    prosecution's failure to provide information constituted a *Brady* violation for the following reason:

2    　　Simmerson told a story to the police that petitioner assaulted him
3    with the semiautomatic firearm proximate in time and place to
     petitioner's alleged assaults against [Raelene] and Richard Noel,
4    Simmerson included details about a black bag, red bandanna, and a
     semiautomatic gun in that story, and those three items were found in
5    [Raelene's] car shortly after the alleged offenses against her.  The
     prosecution used the bag, bandanna, and gun, based solely on
6    [Raelene's] testimony uncorroborated by any forensic evidence, to
     link petitioner to the alleged crimes against her.  If the state's
7    investigation determined that Simmerson had concocted his entire
     assault story out of whole cloth and that it was simply untrue, which
8    is apparently what led the prosecutor to move for dismissal of the
     assault charge, evidence could have been adduced at trial
9    demonstrating to the jury that the lone source for his including the
     black bag, bandanna, and semiautomatic gun in his false story had to
10   have been [Raelene], and his motivation for doing so had to have
     been a desire to inculpate petitioner and bolster [Raelene's]
11   otherwise uncorroborated story linking petitioner to those items.
     The suppressed materials, that is, the information that caused the
12   prosecution to dismiss the assault charge against Simmerson, has to
     be favorable to petitioner.  Its precise materiality may not be capable
13   of establishment in the absence of its production, but there should be
     no question a likelihood exists that it contains information that, at
14   minimum, defense counsel could have effectively used to impeach
     [Raelene's] credibility.  It simply cannot be mere coincidence that
15   Simmerson included the black bag, bandanna, and semiautomatic
     gun in his story, which just happened to be the three items found in
16   [Raelene's] car.  There seems no explanation as to why [Raelene]
     told Simmerson about these things and why he then took those
17   details to the police in his story about the assault that the prosecutor
     ultimately found uncreditworthy other than one that would have
18   damaged her credibility.

19   Opp'n at 19-20.

20   　　In its motion to dismiss, the state's main argument is that there is a procedural default that

21   bars Count 9: "The California Court of Appeal found the claim procedurally barred because[] (1)

22   the trial court lacked jurisdiction to consider the new trial motion raising the *Brady* claim on

23   resentencing; and (2) petitioner did not raise the *Brady* claim at the time of trial when the charge

24   was dismissed." Mot. at 12.[8]  For purposes of this order, the Court addresses only the second

25   _____

26   [8] The full text from the opinion of the California Court of Appeal is as follows:

27   　　[T]he court lacked jurisdiction to grant a new trial premised on the
     alleged withholding of potentially exculpatory evidence relating to
28   the charge the prosecution dismissed before trial.  The *Brady* claim
     is also forfeited.  Noel was obviously aware of the dismissal of the

18

1    argument.

2          Mr. Noel does not dispute that there is a procedural default here based on his failure to

3    raise the claim at the time the charge was dismissed.  However, he invokes cause and prejudice to

4    overcome the procedural default.  Specifically, he argues that there is cause and likely prejudice to

5    overcome that default.

6          1.    Cause

7    The Court does not find cause for the procedural default.

8              Cause . . . requires a showing of some external impediment
             preventing counsel from constructing or raising the claim.  For cause
9              to exist, the external impediment, whether it be government
             interference or the reasonable unavailability of the factual basis for
10             the claim, must have prevented petitioner from raising the claim.

11   *McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  In his papers, Mr. Noel contends that "the cause

12   here is the prosecution's suppression of the materials underlying its decision to dismiss the charge

13   against petitioner of assault with a dangerous weapon, *coupled* with defense counsel's

14   ineffectiveness in failing to immediately demand their production."  Opp'n at 18-19 (emphasis

15   added).  But this position is problematic for two reasons.

16         As to the prosecution's suppression of materials, Mr. Noel is correct that "a petitioner

17   shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the

18   State's suppression of the relevant evidence."  *Banks*, 540 U.S. at 691.  But that circumstance is

19   not applicable in the instant case.  Mr. Noel knew, during the trial proceedings, that the state was

20   dismissing the assault charge related to Mr. Simmerson and thus Mr. Noel could have brought up

21   at that time the failure to provide information about the investigation into that charge.  *Cf. Woods*

22   *v. Sinclair*, 764 F.3d 1109, 1130-31 (9th Cir. 2014) (petitioner failed to show cause where

23   prosecutor disclosed potential *Brady* material before trial, putting petitioner on notice, and

24

25   _____

26              charge and the prosecution's failure to explain its reasoning when
             the dismissal occurred, but he raised no *Brady* claim at that time.
             Additionally, the claim fails on the merits because, as Noel
27              acknowledges, "he cannot meet the specific requirements of
             *Brady*[.]"

28   People v. Noel, 2020 Cal. App. Unpub. LEXIS 8223, at *7.

United States District Court
Northern District of California

1    therefore his failure to develop the factual basis of his claim could not be attributable to the

2    prosecution's failure to disclose relevant evidence).

3            To the extent Mr. Noel claims ineffective assistance of counsel as the basis for cause, the

4    Supreme Court has "acknowledged that in certain circumstances counsel's ineffectiveness in

5    failing properly to preserve the claim for review in state court will suffice [to establish cause to

6    overcome a procedural default]." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("[W]e have

7    acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to

8    preserve the claim for review in state court will suffice [to establish cause to overcome a

9    procedural default]."). But notably, for ineffective assistance to constitute cause, both prongs of

10   *Strickland* must be satisfied – *i.e.*, not only ineffective assistance of counsel but also prejudice as a

11   result.[9] *See Aparicio v. Artuz*, 269 F.3d 78, 99 n.10 (2d Cir. 2001) (stating that ineffective

12   assistance of counsel "can establish cause for a procedural default only if it is itself a valid

13   constitutional claim"). Mr. Noel has suggested that prejudice is likely but seems to admit that he

14   cannot establish the requisite prejudice without seeing the suppressed materials which have never

15   been provided. To address this problem, Mr. Noel has suggested that the state should compelled

16   to provide the suppressed materials for this Court to review. *See* Opp'n at 20 ("The court in

17   *Walker v. Gittere*, 2025 WL 1169145 (D. Nev. Apr. 21, 2025), adopted a similar approach to that

18   which petitioner requests herein. There, the petitioner asked the court to defer adjudicating his

19   cause-and-prejudice argument on his *Brady* claim until the materials at issue were disclosed by the

20   state, which the court deemed 'a reasonable approach.'").

21           But even if that were a valid option for the Court, the larger problem for Mr. Noel is that,

22   to serve as "cause," the claim of ineffective assistance of counsel must have been presented as an

23   _____

24   [9] Prejudice is also a component of a *Brady* claim as well as a component of the cause and
     prejudice needed to overcome a procedural default. *See Strickler v. Greene*, 527 U.S. 263, 281
25   (1999) (stating that "there is never a real '*Brady* violation' unless the nondisclosure was so serious
     that there is a reasonable probability that the suppressed evidence would have produced a different
26   verdict"); *United States v. Frady*, 456 U.S. 152, 168 (1982) (in discussing cause and prejudice,
     noting that "[p]etitioner bears the burden of showing, not merely that errors at his trial created a
27   possibility of prejudice, but that they 'worked to his actual and substantial disadvantage, infecting
     his entire trial with error of constitutional dimensions'"). The Ninth Circuit has noted that, where
28   suppressed evidence is material for *Brady* purposes, that establishes prejudice under the cause and
     prejudice standard. *See Martinez*, 926 F.3d at 1227.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   independent claim to the state courts.  *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)

2   ("Ineffective assistance of counsel . . . is cause for a procedural default. However, we think that

3   the exhaustion doctrine, which is 'principally designed to protect the state courts' role in the

4   enforcement of federal law and prevent disruption of state judicial proceedings,' generally requires

5   that a claim of ineffective assistance be presented to the state courts as an independent claim

6   before it may be used to establish cause for a procedural default.").  As discussed above, Mr.

7   Noel's claim of ineffective assistance of counsel (Count 3) has been procedurally defaulted.  *See*

8   Part II.B, *supra*.  A procedurally defaulted ineffective assistance of counsel claim is not cause to

9   excuse the default of another habeas claim unless the petitioner can satisfy the cause and prejudice

10  standard with respect to the ineffective assistance of counsel claim itself.  *See Edwards v.*

11  *Carpenter*, 529 U.S. 446, 453 (2000) ("To hold . . . that an ineffective-assistance-of-counsel claim

12  asserted as cause for the procedural default of another claim can itself be procedurally defaulted is

13  not to say that that procedural default may not itself be excused if the prisoner can satisfy the

14  cause-and-prejudice standard with respect to that claim.") (emphasis omitted); *Cockett v. Ray*, 333

15  F.3d 938, 943 (9th Cir. 2003) ("Because Cockett's claim of ineffective assistance of trial counsel

16  was procedurally defaulted, trial counsel's performance cannot constitute cause.").  Here, as

17  indicated above, Mr. Noel did not claim cause and prejudice to overcome the procedural default

18  related to Count 3.

19          2.   Prejudice

20          Furthermore, even if Mr. Noel did make a sufficient case for cause, he must also establish

21  prejudice in order to overcome the procedural default.  Even if Mr. Simmerson lied to *bolster*

22  Raelene's testimony, that does not mean that Raelene lied.  Furthermore, even if Raelene's

23  credibility was somehow put into question, there was still Richard's testimony which was

24  supported by physical and forensic evidence.  *See* note 9, *supra*; *United States v. Kohring*, 637

25  F.3d 895, 902 (9th Cir. 2011) (stating that "[e]vidence is prejudicial or material for *Brady*

26  purposes "'only if there is a reasonable probability that, had the evidence been disclosed to the

27  defense, the result of the proceeding would have been different'").  Disclosure of Mr.

28  Simmerson's putative lie would not likely have had a material effect on the outcome of the case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### III.    CONCLUSION

For the foregoing reasons, the Court grants the state's motion to dismiss Counts 3, 8, and 9.  At this juncture, there is now only one count remaining: Count 6.  The Court orders the state to file an answer to Count 6 within 60 days of the date of this order and Mr. Noel to file a traverse within 30 days thereafter.

This order disposes of Docket No. 25.


**IT IS SO ORDERED**.


Dated: October 24, 2025


_____
EDWARD M. CHEN
United States District Judge