UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICK NOEL,

          Petitioner,

      v.

SUSAN PEERY,

          Respondent.

Case No. 21-cv-08801-EMC

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

Docket No. 1

Patrick Noel has filed a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. He contends that evidence admitted during state court trial proceedings violated his rights under the Confrontation Clause of the Sixth Amendment and that a state court decision denying him relief in spite of this error was unreasonable. Having considered the parties' briefs and accompanying submissions, the Court hereby **DENIES** Mr. Noel's petition.

### I.      FACTUAL & PROCEDURAL BACKGROUND

A.    2005 Conviction

In 2005, Mr. Noel was convicted by a jury in state court. He was found guilty of several crimes, including attempted murder and assault of his cousin, Richard. The evidence presented to the jury is summarized in a state court appellate decision. *See People v. Noel*, No. A110859, 2007 Cal. App. Unpub. LEXIS 1511, at *1-2 (Cal. Ct. App. Feb. 26, 2007). To wit:

On November 26, 2003, at around 9:30 p.m., Richard – Mr. Noel's cousin – was walking on a street when a black Mitsubishi Montero drove past him. Richard recognized the car as belonging to his friend Raelene, and he further saw Mr. Noel driving the car. *See id.* at *3. Mr. Noel turned the car around and pulled to a stop in the middle of the street next to Richard. *See id.*

"Richard saw a flash through the rear passenger side window, heard a gunshot, and felt a gust of wind on his neck." *Id.* He ran to a friend's house which was close by and said, "'Oh, my god, Patrick shot me.'" *Id.*

The following morning, at around 2:00 a.m., Mr. Noel went to Raelene's house. Raelene was Mr. Noel's girlfriend. Mr. Noel went to Raelene's bedroom window and told her that "he had tried to kill his cousin because Richard had snitched on him in the past." *Id.*

The police were later dispatched to Raelene's house at around 4:00 a.m. because "it was reported that defendant was trying to break in through a window." *Id.* at *3-4. When the police arrived, Mr. Noel was no longer there, but the police found the black Montero in the street. The police also found a pistol in the front seat, "partially covered by a red bandana." *Id.* at *4. The following day, the police conducted a second search of the car and "found a shell casing in the rear, where it would have been ejected if defendant had been shooting out the rear passenger-side window from the driver's seat." *Id.*

Based on, *inter alia*, the above, the jury convicted Mr. Noel of attempted murder of Richard and assault on Richard with a firearm. The jury further found Mr. Noel guilty of the crime of unlawful participation in a criminal street gang and also found certain allegations related to gang enhancements to be true. Specifically, the jury found that the crimes against Richard "were committed for the benefit of a criminal street gang."[1] *Id.* at *2.

A police officer by the name of Michael Globe testified as a gang expert in support of the prosecution. *See id.* at *7.

> He gave background information about the Norteno street gang. [He] testified that members of the Norteno gang typically wear red clothing, carry red bandanas, and have tattoos, including representations of the number 14, because "N" is the 14th letter of the alphabet. Globe testified that in his opinion defendant was a member of the Nortenos. He based his opinion on the fact that in November 2002 defendant admitted to Officer Globe that he was a Norteno; that during this 2002 encounter defendant wore a red

---

[1] "[A] gang enhancement . . . is not a substantive offense," but rather "provides for greater punishment where a defendant is convicted of a gang-related felony; that is, a felony 'committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.'" *Noel*, 2007 Cal. App. Unpub. 1511, at *16.

United States District Court
Northern District of California

sweatshirt, red belt, and red bandana, and that the defendant had various tattoos that identified him as a Norteno. In particular, defendant had a tattoo of the number 14; a one-dot and a four-dot tattoo that together represent the number 14; and a tattoo of the letters "WSK," short for "Willits Scrap Killers." Globe testified that "Willits" signifies the city of Willits and "scrap" is a derogatory term for a member of the rival Sureno gang. The expression "WSK" thus refers to killing Surenos.

Globe further testified that a gang member can earn ""respect" from his gang in many ways, including committing crimes for the promotion of the gang, or "creating a fear in society and the fear against Sureno gang members." Even if a defendant committed a violent crime by himself, the gang would benefit because "when people find out what you did, the gang finds out what you did, the rival gang members find out what you did, it creates the fear to others and it gives you respect from within the gang that this person is willing to do anything and die for whatever cause they believe in dying for." Officer Globe explained that in the gang world, if "you attempt to kill or shoot at a snitch because he's a snitch – which in the gang culture and in the criminal culture is less than a person, because they're not a stand-up person, because in a sense they're ratting out the other guys – killing that person or attempting to kill that person would gain respect within the gang" and give the perpetrator "almost [] a higher status" within the gang for his efforts. Globe was of the opinion that when defendant shot at Richard he was benefiting the Norteno gang because defendant believed Richard was a snitch and snitches are disdained in gang culture. Even if Richard were not a member of a gang (and there was no evidence that he was), a crime committed by a Norteno against an ordinary citizen could benefit the Norteno gang.

*Id.* at *7-8.

In addition to the gang expert, Richard provided testimony about Mr. Noel and his gang affiliation. Richard testified that Mr. Noel said he was a gang member, that Mr. Noel preferred to wear red, that Mr. Noel's "WSK" tattoo conveyed a dislike of the Surenos, and that the "14" tattoo relates to Nortenos. *See id.* at *9. Raelene (Mr. Noel's girlfriend at the time of the attempted murder and assault) also testified that "defendant made it known to everyone that he was affiliated with the Nortenos." *Id.*

In addition to the crimes of attempted murder of and assault on Richard, the jury found Mr. Noel guilty of other felonies based on his conduct with respect to Raelene. The jury was presented with evidence that, at around 3:00 p.m. on November 26, 2003 (*i.e.*, earlier in the day before Mr. Noel shot at Richard), Mr. Noel went to Raelene's house with the black Montero and wanted her to drive him from Willits to Oroville. Raelene agreed because she wanted to get her car back and

3

to end her relationship with Mr. Noel.

Raelene drove Mr. Noel with her 4-year-old daughter, J.D., in the back seat of the Montero. *See id.* at *4. At some point, Mr. Noel no longer wanted to go to Oroville and so they turned around to return to Willits. During the drive back, Mr. Noel and Raelene got into an argument, Mr. Noel pulled out a pistol and fired it into the floor of the car, and Mr. Noel later put the pistol up against Raelene's leg. *See id.* at *4-5. Raelene eventually got out of the car with J.D., and Mr. Noel drove off in the Montero. *See id.* at *5.

After the jury convicted Mr. Noel, he moved for a new trial. The state trial court granted in part the motion for a new trial. Specifically, it vacated the enhancements based on allegations that Mr. Noel had committed the crimes against Richard for the benefit of a street gang. *See id.* at *2. After the prosecuted decided not to retry the enhancements or appeal the court's decision, the trial court sentenced Mr. Noel to 41 years. *See id.* at *2-3.

B.     2007 Direct Appeal in State Court

Mr. Noel pursued a direct appeal in state court. In 2007, the state appellate court affirmed his conviction but modified his sentence (because of an issue related to a firearm enhancement). Of note, the appellate court upheld the conviction on the crime of gang participation, even though the trial court had vacated the gang enhancements. The appellate court explained:

> Defendant misconstrues the nature of the trial court's finding. "In considering a motion for a new trial made on the ground of insufficiency of the evidence to support the verdict, the trial court independently weighs the evidence" and should grant the motion if it would have decided the case differently from the jury. But a trial court's decision to grant a motion for a new trial is not a determination that the evidence is insufficient as a matter of law. That is the issue before us now under the substantial evidence test. Unlike a trial court considering a motion for a new trial, in deciding whether substantial evidence supports a verdict this court does not independently reweigh the evidence. Instead, we consider whether any rational trier of fact could have found proof beyond a reasonable doubt. The trial court's decision to grant the motion for a new trial with respect to the enhancement indicates that a rational trier of fact could conclude that the prosecution failed to prove beyond a reasonable doubt that the shooting was gang-related, but it does not show that no rational trier of fact could conclude to the contrary. Although the trial court concluded there was insufficient evidence of gang-relatedness under his independent review of the evidence, our review is more deferential to the jury's verdicts.

*Id.* at \*28-29 (emphasis omitted).

C.    2008 First Federal Habeas Petition

In 2008, Mr. Noel filed his first federal habeas petition. *See Noel v. Walker*, No. C-08-3777 EMC (N.D. Cal.). This Court denied him relief, and Mr. Noel took an appeal to the Ninth Circuit. On appeal, he made two arguments: (1) the evidence at trial was constitutionally insufficient to support a conviction for gang participation; and (2) his right to a fair trial was violated because the state trial court admitted irrelevant, unfairly prejudicial gang evidence. *See Noel v. Lewis*, 605 Fed. Appx. 606, 607 (9th Cir. 2015).

In a decision issued in 2015, the Ninth Circuit agreed with Mr. Noel on the first argument. The Ninth Circuit noted that, after the state appellate court's decision in Mr. Noel's case was issued, the California Supreme Court held that the crime of gang participation must be based on a felony committed by at least two members of the same gang. Here, "[p]rosecutors had not presented evidence that any other member of Noel's gang participated in the drive-by shooting with Noel." *Id.* at 608.

However, the court rejected Mr. Noel's second argument, explaining that, "[e]ven though Noel could not have been convicted of the gang participation offense . . . because he committed his crimes alone, he could have been subject to the [gang] enhancement." *Id.* at 609. The Ninth Circuit added that, even though the state trial court had set aside the gang enhancement, "that ruling, in and of itself, does not establish that there were no permissible inferences to be drawn from the gang evidence. Noel's due process rights to a fair trial were not violated by admission of the gang evidence, from which permissible inferences about Noel's motive could have been drawn." *Id.*

Following the Ninth Circuit's ruling, Mr. Noel was resentenced in 2016 to 39 years. He was later resentenced again in 2019 because he had been denied the right to be present at the 2016 resentencing. At the 2019 resentencing, he was resentenced to 37 years. *See* Docket No. 6 (Order at 2); *see also People v. Noel*, No. A159257, 2020 Cal. App. Unpub. LEXIS 8223, at \*5-6 (Cal. Ct. App. Dec. 14, 2020).

United States District Court
Northern District of California

5

D.　　2019 Second Federal Habeas Petition

In 2019, Mr. Noel filed a second federal habeas petition. *See Noel v. Warden*, No. C-19-3118 EMC (N.D. Cal.). The Court dismissed that petition on the basis of *Younger* abstention – *i.e.*, because, at the time of the Court's ruling, the 2019 resentencing was still pending in state court. *See* Docket No. 6 (Order at 2).

E.　　2021 Third Federal Habeas Petition

In 2021, Mr. Noel filed a third federal habeas petition. This is the petition in the case at bar. Following several rulings by the Court, *see, e.g.*, Docket No. 28 (order granting the state's motion to dismiss several of the claims asserted in the habeas petition), the only claim that now remains is a claim that Mr. Noel's rights under the Confrontation Clause of the Sixth Amendment were violated.

According to Mr. Noel, his Sixth Amendment rights were violated when Officer Globe provided certain testimony related to a "pattern of criminal gang activity" by the Nortenos. "Pattern of criminal gang activity" was relevant because one of the crimes charged against Mr. Noel was gang participation in violation of California Penal Code § 186.22. In 2005, § 186.22(a) provided as follows:

> Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a *pattern of criminal gang activity*, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years.

Cal. Pen. Code § 186.22(a) (2005) (emphasis added). "Pattern of criminal gang activity" was defined as

> the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses [*e.g.*, assault with a deadly weapon, robbery, or murder], provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons.

*Id.* § 186.22(e); *see also* CT 223 (jury instruction on crime of gang participation).

During the trial, the state asked a police officer – Officer Globe – to provide testimony about a pattern of criminal gang activity. Specifically, Officer Globe was asked if he was aware of any prior offenses committed by the Norteno gang within three years of November 26, 2003 (*i.e.*, the date of the assault on Richard). Officer Globe stated that he was aware of some prior offenses and identified three in particular:

- "In 2001, the Ukiah Police Department investigated a Norteno/Sureno assault with a deadly weapon." 9 RT 204.
- "[In] 2022, [the] Ukiah Police Department investigated a robbery/assault with a deadly weapon between Nortenos and Surenos." 9 RT 204.
- "And [in] 2003, . . . there was another Ukiah Police Department case where there was a Norteno/Sureno assault with a deadly weapon." 9 RT 204.

Officer Globe later provided some additional details regarding the three prior offenses. *See* 10 RT 228-29 (testifying that, in the first incident, a group of Norteno gang members stabbed a Sureno gang member (a juvenile) in the chest and arm); 10 RT 230 (testifying that, in the second incident, two Nortenos assaulted a Sureno with a knife and also beat him with their hands); 10 RT 230-31 (testifying that, in the third incident, three Nortenos assaulted a person suspected of being a Sureno; they beat the victim with their hands, kicked him in the face, and broke a beer bottle over him).

Notably, Officer Globe did not have any direct personal knowledge of any of the three offenses. Rather, his knowledge about the three offenses came from police reports on the three incidents. *See, e.g.*, 10 RT 277-78 (in closing argument, prosecution stating that Officer Globe relied on police reports when testifying about a pattern of criminal gang activity).

According to Mr. Noel, when Officer Globe testified about the three prior offenses, Mr. Noel's Sixth Amendment rights were violated as established by the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the criminal defendant was charged with stabbing a man who allegedly tried to rape his wife. At trial, the defendant claimed self-defense, and his wife did not testify because of the state marital privilege. But "[i]n Washington, this privilege [did] not extend to a spouse's out-of-court statements admissible under a hearsay

United States District Court
Northern District of California

exception." *Id.* Thus, the state was able to play for the jury a tape-recorded statement that the defendant's wife gave to the police in which she described the stabbing. *See id.* The defendant argued that the admission of his wife's statement violated the Sixth Amendment's Confrontation Clause, which "provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Id.* at 42. The Supreme Court agreed. It held that the Sixth Amendment bars admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, *and* the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54 (emphasis added). The fact that the evidence might be reliable was not enough to justify its admission. *See id.* at 61 ("Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."). As examples of testimonial evidence, the Court referred to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial" as well as "police interrogations." *Id.* at 68; *see also id.* at 51-52 (noting that "[s]tatements taken by police officers in the course of interrogations are . . . testimonial"; "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not").

Based on the record submitted, it appears that Mr. Noel raised his Confrontation Clause claim for the first time when he filed his petition for habeas relief with the California Supreme Court. *See* Ans., Ex. 16 (habeas petition, filed with the California Supreme Court); *see also* Resp. Br. at 2 n.3 (noting that Mr. Noel "did not raise claim 6 of his federal petition in either his superior court or court of appeal habeas petitions"). The California Supreme Court summarily denied all claims raised in the habeas petition. *See* Ans., Ex. 17 (docket sheet).

## II.    DISCUSSION

A.    Legal Standard

A district court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in

8

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Anti-Terrorism and Effective Death Penalty Act of 1994 ("AEDPA"), a petitioner must demonstrate that the state court's adjudication of the merits of his claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A federal court must presume the correctness of the state court's factual findings; a petitioner may only rebut the presumption with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  In applying the above standards, a federal court looks to the "last reasoned decision" by a state court.  *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010).  Where there is no reasoned state court decision (as here, where there was a summary denial of habeas relief by the California Supreme Court), a district court must conduct an independent review of the record to determine what rationale could support the state court judgment and whether such rationale was an objectively reasonable application of federal law.  *See Harrington v. Richter*, 562 U.S. 86, 102 (2011) (stating that "a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court").

The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have separate and distinct meanings.  A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A decision involves an "unreasonable application" of Supreme Court law if "the state court identifies the correct governing principle . . . but unreasonably applies that principle to the facts of" the petitioner's case.  *Id.* at 414.  Additionally, a state court's decision may be an "unreasonable application" of federal law if it "extends or fails to extend a clearly established

9

legal principle to a new context in a way that is objectively unreasonable." *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir. 2002).

The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). To be objectively unreasonable, a state court's error must be "so lacking in justification that [it is] well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 563 U.S. at 103. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* Additionally, "[h]oldings of the United States Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA. While Circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only these holdings need be reasonably applied." *Rowland v. Chappell*, 902 F. Supp. 2d 1296, 1309 (N.D. Cal. 2012).

B.    *Crawford*, *Williams*, and *Smith*

As noted above, Mr. Noel asserts that his rights under the Confrontation Clause were violated when Officer Globe testified about the three prior offenses involving the Norteno gang because (1) Officer Globe did not have direct personal knowledge about the three offenses; (2) Officer Globe's knowledge of the offenses was based on police reports which constitute testimonial evidence; and (3) Mr. Noel did not have a prior opportunity to cross-examine the officers who were actually involved in investigating the three offenses or preparing the police reports for the same. Mr. Noel maintains that, to the extent the California Supreme Court found no constitutional violation, that was an objectively unreasonable application of *Crawford* about which fair-minded jurists could not disagree.

10

In response, the state essentially contends that, at the time the California Supreme Court issued its decision denying Mr. Noel habeas relief (*i.e.*, in 2018), a more recent Supreme Court decision on the Sixth Amendment was on point – and under that decision, there was no Confrontation Clause violation. The case on which the state relies is *Williams v. Illinois*, 567 U.S. 50 (2012), where a plurality decision was rendered. The state admits that the plurality decision in *Williams* was later abrogated in *Smith v. Arizona*, 144 S. Ct. 1785 (2024), but contends that, notwithstanding such, in 2018, *Williams* (and not *Smith*) still provided the benchmark.

In *Williams*, the criminal defendant was charged with rape. Vaginal swabs were taken from the victim, and the state police laboratory sent the biological samples to Cellmark, another laboratory. "Cellmark sent back a report containing a male DNA profile produced from semen taken from those swabs," and then a forensic specialist at the state police laboratory "conducted a computer search to see if the Cellmark profile matched any of the entries in the state DNA database. The computer showed a match to a profile produced by the lab from a sample of petitioner's blood that had been taken after he was arrested on unrelated charges . . . ." *Id.* at 59.

At trial, the forensic specialist testified about the match between the DNA profile provided by Cellmark and the profile in the state DNA database. But no testimony from Cellmark was ever admitted into evidence. A plurality (four justices) found that, even though the prosecution did not offer independent testimony from Cellmark about the DNA profile it had prepared, there was no Confrontation Clause problem. The plurality reasoned that "the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted,'" *Id.* at 70, and "[o]ut-of-court statements that are related by the expert *solely for the purpose of explaining the assumptions on which that opinion rests* are not offered for their truth and thus fall outside the scope of the Confrontation Clause." *Id.* at 58 (emphasis added); *see also id.* at 78 (stating that "[t]he purpose of disclosing the facts on which the expert relied is to allay these fears – to show that the expert's reasoning was not illogical, and that the weight of the expert's opinion does not depend on factual premises unsupported by other evidence in the record – not to prove the truth of the underlying facts").

///

11

> In this case, the Cellmark report was not introduced into evidence. An expert witness referred to the report not to prove the truth of the matter asserted in the report, i.e., that the report contained an accurate profile of the perpetrator's DNA, but only to establish that the report contained a DNA profile that matched the DNA profile deduced from petitioner's blood. . . . The relevance of the match was then established by independent circumstantial evidence showing that the Cellmark report was based on a forensic sample taken from the scene of the crime.

*Id.* at 79.[2]

The plurality added that,

> even if the report produced by Cellmark had been admitted into evidence, there [still] would have been no Confrontation Clause violation. The Cellmark report is very different from the sort of extrajudicial statements, such as affidavits, depositions, prior testimony, and confessions, that the Confrontation Clause was originally understood to reach. The report was produced before any suspect was identified. The report was sought not for the purpose of obtaining evidence to be used against petitioner, who was not even under suspicion at the time, but for the purpose of finding a rapist who was on the loose. And the profile that Cellmark provided was not inherently inculpatory. On the contrary, a DNA profile is evidence that tends to exculpate all but one of the more than 7 billion people in the world today.

*Id.* at 58.

The dissent (also four justices) disagreed with both parts of the plurality's analysis. The remaining justice, Justice Thomas, concurred with the judgment because he concluded that Cellmark's out-of-court statements were not testimonial in nature and thus there was no Confrontation Clause violation. *See id.* at 103-04 (Thomas, J., concurring). However, like the dissenting justices, Judge Thomas believed that "statements introduced to explain the basis of an expert's opinion are not introduced for a plausible nonhearsay purpose. There is no meaningful distinction between disclosing an out-of-court statement so that the factfinder may evaluate the expert's opinion and disclosing that statement for its truth." *Id.* at 106 (Thomas, J., concurring); *see also id.* at 109 ("The existence of other evidence corroborating the basis testimony may render any Confrontation Clause violation harmless, but it does not change the purpose of such testimony and thereby place it outside of the reach of the Confrontation Clause.").

---

[2] The plurality did suggest, however, that its views might be different had the case before it involved a jury trial instead of a bench trial. *See id.* at 72.

12

United States District Court
Northern District of California

*Williams* issued in 2012.  The plurality decision in *Williams* was not abrogated until the Supreme Court decided *Smith* in 2024.  In *Smith*, the Supreme Court adopted the views of the dissenting justices in *Williams*, plus Justice Thomas.  *See Smith*, 602 U.S. at 783 (holding that, "[w]hen an expert conveys an absent analyst's statements in support of his opinion, and the statements provide that support only if true, then the statements come into evidence for their truth"; "if those statements are testimonial too[,] . . . the Confrontation Clause will bar their admission"); *id.* at 796 (noting that a "jury cannot decide whether the expert's opinion is credible without evaluating the truth of the factual assertions on which it is based").[3]

In the instant case, the state points out that the California Supreme Court issued its summary decision denying Mr. Noel habeas relief in 2018 – *i.e.*, after *Williams* but before *Smith*.  According to the state, because *Williams* was still the governing law at the time of the California Supreme Court's decision, "fair-minded jurists could disagree about whether admitting the challenged [testimony of Officer Globe on the three prior gang offenses] violated *clearly established federal law*, especially given substantial ambiguity in this area," which included the impact of *Williams*.  *Garrett v. Madden*, 859 Fed. Appx. 156, 158 (2021); *cf. Smith*, 602 U.S. at 789 (noting that "[o]ur opinions in *Williams* 'have sown confusion in courts across the country' about the Confrontation Clause's application to expert opinion testimony," with some courts applying "the *Williams* plurality's 'not for the truth' reasoning to basis testimony, while others have adopted the opposed five-Justice view [*i.e.*, the view of the four dissenting justices, plus Justice Thomas][;] [t]his case emerged out of that muddle").[4]

---

[3] The *Smith* Court noted that an expert could still be asked hypothetical questions

> taking the form of: "If or assuming some out-of-court statement were true, what would follow from it?"  (The State of course would then have to separately prove the thing assumed.) . . . . [Such] forms of testimony allow forensic expertise to inform a criminal case without violating the defendant's right of confrontation.

*Smith*, 602 U.S. at 799-800.

[4] The state acknowledges that, although the Supreme Court did not abrogate *Williams* until 2024, the California Supreme Court rejected the reasoning of the *Williams* plurality in 2016.  *See People v. Sanchez*, 63 Cal. 4th 665, 684 (2016) ("We find persuasive the reasoning of a majority of justices in *Williams* [*i.e.*, the dissenting justices, plus Justice Thomas].  When an expert is not

United States District Court
Northern District of California

The problem with the state's argument is that, even if the California Supreme Court only had *Williams* to consider, and not *Smith*, *Williams* is not on point. In *Williams*, the critical issue revolved around the fact that an expert was relying on other evidence *to explain the basis of her opinion*. In the instant case, Officer Globe was not relying on the police reports about prior Norteno offenses to explain the basis for any opinion. Rather, he was relying on the police reports *for their truth*: to prove, as a factual matter, a pattern of criminal gang activity, one of the elements of the crime of gang participation. *Cf. Smith*, 602 U.S. at 783 (noting that, in a 2009 decision, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 307 (2009), the Supreme Court held that "a prosecutor cannot introduce an absent laboratory analyst's testimonial out-of-court statements to prove the results of forensic testing"); *Williams*, 567 U.S. at 65 (noting that, in *Melendez-Diaz*, three "certificates of analysis" from a state forensic laboratory found that a substance contained cocaine; "[t]here was no doubt that the certificates were used to prove the truth of the matter they asserted" as their "'sole purpose . . . was to provide prima facie evidence of the composition, quality, and the net weight of the analyzed substance'"). And Officer Globe's testimony was clearly testimonial in nature for purposes of *Crawford*. Because Officer Globe was relying on the police reports for their truth in order to establish an element of the crime, *Crawford* governs and dictates that there was a Confrontation Clause violation when Mr. Noel was not given the opportunity to cross-examine those officers directly involved with the three prior gang offenses.

Accordingly, the Court concludes that it would have been an unreasonable application of federal law if the California Supreme Court had determined there was no Confrontation Clause violation when Officer Globe testified about the three prior offenses involving the Norteno gang.

---

testifying in the form of a proper hypothetical question and no other evidence of the case-specific facts presented has or will be admitted, there is no denying that such facts are being considered by the expert, and offered to the jury, as true."). But the United States Supreme Court, not the California Supreme Court, establishes federal law. *See Chavez v. Sullivan*, 831 F. App'x 234, 234 (9th Cir. 2020) (denying habeas relief under § 2254 because petitioner failed to "cite any U.S. Supreme Court decision applying *Crawford* in the same manner as *Sanchez*"); *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004) (stating that, "[a]lthough . . . state court precedent may be relevant when that precedent illuminates the application of clearly established federal law as determined by the United States Supreme Court, if it does not do so, it is of no moment").

United States District Court
Northern District of California

C.    Prejudice

Although there was a Confrontation Clause violation, Mr. Noel is not entitled to not entitled to habeas relief unless he can also establish prejudice. "A Confrontation Clause violation is harmless, and so does not justify habeas relief, unless it had substantial and injurious effect or influence in determining the jury's verdict." *Ocampo v. Vail*, 649 F.3d 1098, 1114-15 (9th Cir. 2011) (internal quotation marks omitted; citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Here, that standard has been met.

First, Officer Globe's testimony, as indicated above, was used to establish an element of the crime of gang participation. However, Mr. Noel's conviction for that crime was already vacated as a result of prior habeas proceedings before the Ninth Circuit. *See Noel*, 605 Fed. Appx. at 607 (holding that "Noel's gang participation conviction under California Penal Code § 186.22(a) is contrary to clearly established federal law").

Second, to the extent Mr. Noel is concerned that evidence about the prior gang offenses could have had affected the jury's views on Mr. Noel's crimes against Richard (attempted murder and assault with a firearm), the Ninth Circuit also held in the prior habeas proceedings that gang-related evidence was not prejudicial to Mr. Noel. Gang-related evidence was relevant to Mr. Noel's motive for committing the crimes against Richard.[5] *See id.* at 609 (noting that, "[e]ven though Noel could not have been convicted of the gang participation offense under section 186.22(a) because he committed his crimes alone, he could have been subject to the [gang] enhancement in California Penal Code § 186.22(b)(1)"; "permissible inferences about Noel's motive could have been drawn" from the gang evidence). The fact that the state trial court subsequently vacated the gang enhancements was not dispositive. *See id.* (acknowledging that the state trial court "set aside the jury's finding on the enhancement," but holding that "that ruling, in and of itself, does not establish that there were no permissible inferences to be drawn from the

---

[5] It is also worth noting that the evidence about the prior gang offenses was relatively minor. That is, there was far more significant gang-related evidence that was presented to the jury, including testimony by Officer Globe that Mr. Noel had previously admitted to being a gang member, testimony by Richard that Mr. Noel had told him he was a gang member, and testimony by Raelene that Mr. Noel "made it known to everyone that he was affiliated with the Nortenos." *Noel*, 2007 Cal. App. Unpub. LEXIS 1511, at *8-9.

15

gang evidence"). Indeed, as the state appellate court explained:

> "In considering a motion for a new trial made on the ground of insufficiency of the evidence to support the verdict, the trial court independently weighs the evidence" and should grant the motion if it would have decided the case differently from the jury. But a trial court's decision to grant a motion for a new trial is not a determination that the evidence is insufficient as a matter of law. . . . The trial court's decision to grant the motion for a new trial with respect to the enhancement indicates that a rational trier of fact could conclude that the prosecution failed to prove beyond a reasonable doubt that the shooting was gang-related, but it does not show that no rational trier of fact could conclude to the contrary.

*Noel*, 2007 Cal. App. Unpub. LEXIS 1511, at *28-29 (emphasis omitted). The evidence was relevant and was not erroneously and unconstitutionally admitted.

Furthermore, putting aside the evidence about the gang prior offenses and Mr. Noel's motive for the shooting, there was a significant amount of evidence that Mr. Noel was the one who shot at Richard, and this was sufficient to sustain the verdict on the crimes at issue. This included testimony by Richard, who recognized both Raelene's car and Mr. Noel as the driver (and who implicated Mr. Noel in the immediate aftermath of the incident), and testimony by Raelene, who stated that Mr. Noel had been driving her car earlier in the day before Richard was shot at and who further stated that Mr. Noel himself later told her that he had shot at Richard. Although Mr. Noel challenges the credibility of both Richard and Raelene, their testimonies corroborated one another. In addition, there was physical evidence that corroborated both testimonies, in particular, a firearm found in the front seat of the car and a shell casing in the rear (*i.e.*, "where it would have been ejected if [Mr. Noel] had been shooting out the rear passenger-side window from the driver's seat"). *Noel*, 2007 Cal. App. Unpub. LEXIS 1511, at *4.

Finally, the Court rejects Mr. Noel's contention that the evidence about the prior gang offenses also had a substantial and injurious effect or influence in determining the jury's verdict with respect to the crimes against Raelene. The Raelene-related crimes were: assault on Raelene with a firearm; endangering a child; kidnapping of both Raelene and the child; and vehicle theft. There was nothing about the nature of these offenses that was gang related; rather, if anything, the offenses suggested a domestic dispute. And the jury was appropriately instructed that "[e]ach Count charges a distinct crime. You must decide each Count separately. The defendant may be

United States District Court<br>Northern District of California

16

found guilty or not guilty of any or all of the crimes charged. . . .” CT 237. To the extent Mr. Noel challenges Raelene's credibility, there may have been some inconsistencies in her testimony; nevertheless, her overall narrative was consistent.

### III.   CONCLUSION

For the foregoing reasons, the Court denies Mr. Noel's habeas petition. Although there was a Confrontation Clause violation under *Crawford*, it was harmless and thus Mr. Noel is not entitled to relief.

The Clerk of the Court is instructed to enter a final judgment and close the file in the case.

**IT IS SO ORDERED**.

Dated: May 1, 2026

_____
EDWARD M. CHEN
United States District Judge